**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

| | |
|---|---|
| **OHIO RIVER VALLEY ENVIRONMENTAL COALITION, INC.,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **WEST VIRGINIA HIGHLANDS CONSERVANCY, INC.,** ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** \_\_\_3:09-0149\_\_\_ |
| ) | |
| **KENNETH SALAZAR,** ) | |
| **Secretary of the Interior,** ) | |
| **Defendant.** ) | |

## ORIGINAL COMPLAINT AND PETITION FOR JUDICIAL REVIEW

Ohio River Valley Environmental Coalition, Inc. ("OVEC") and West Virginia Highlands Conservancy, Inc. ("WVHC"), bring this action to obtain judicial review of the December 24, 2008, action of Dirk Kempthorne, formerly Secretary of the Interior, to approve certain amendments to the state regulatory program by which the State of West Virginia implements the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201-1328 ("SMCRA"). Since the issuance of former Secretary Kempthorne's decision, Kenneth Salazar replaced him as Secretary of the Interior. Because Secretary Salazar has not withdrawn the decision in question and because the duties of his office charge him with its defense, OVEC and WVHC bring this action against Secretary Salazar in his official capacity. Throughout this complaint, the actions of the Secretary of the Interior and the relief sought against that official are ascribed to "the Secretary."

## Jurisdiction and Venue

1.      The Court has jurisdiction of this action pursuant to 30 U.S.C. § 1276(a)(1) (judicial review of the Secretary's actions under SMCRA "to approve or disapprove a State program").

2.      Alternatively, if action to approve an amendment to a State program does not constitute one type of action "to approve or disapprove a State program," this Court has jurisdiction of this action pursuant to the subsequent provision of 30 U.S.C. § 1276(a)(1) for judicial review of "[a]ny other action constituting rulemaking by the Secretary."

3.      Alternatively, this Court has jurisdiction pursuant to 28 U.S.C. § 1331(a) (federal question) and 28 U.S.C. § 1361 (mandamus).

4.      This Court may issue a declaratory judgment and grant further relief pursuant to 30 U.S.C. § 1276(b) and 28 U.S.C. §§2201 and 2202.

5.      Additionally, OVEC and WVHC have a right to bring this action pursuant to 30 U.S.C. § 1276(a)(1) and the Administrative Procedure Act, 5 U.S.C. §§701 to 706.

6.      Review is properly conducted pursuant to 30 U.S.C. § 1276(a)(1) with respect to claims arising under SMCRA and 5 U.S.C. § 701 *et seq.* with respect to claims based upon the Administrative Procedure Act.

7.      This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(e).

8.      With respect to claims arising under SMCRA, venue lies only in this Court pursuant to 30 U.S.C. § 1276(a)(1), either because this judicial district includes the capital of West Virginia or because at least one "surface coal mining operation" affected by the Secretary's program approval action is located within this judicial district.

9.      There is a present and actual controversy between the parties to this action.

10.     OVEC and WVHC have exhausted their administrative remedies and have no adequate remedy at law.

## Parties

11.     OVEC is a nonprofit membership organization whose principal office is located in Huntington, West Virginia. OVEC's mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, communication, and leadership development.

12.     WVHC is a non-profit membership organization incorporated under the laws of the State of West Virginia.  WVHC is dedicated to preserving the environment and promoting prudent use of natural resources. The Conservancy has over 1,300 members and organizations in West Virginia and bordering states. Throughout its existence, the Conservancy has promoted the protection of West Virginia's land and water resources from the effects of coal mining, timbering, highway and power plant construction, and other developmental activities.

13.     OVEC's membership includes numerous individuals whose interests are or may be adversely affected by the effect of surface coal mining and reclamation operations on West Virginia streams, lakes, and other surface and ground water resources outside the permit areas of such operations.

14.     OVEC's individual members whose interests are or may be so affected depend upon OVEC to represent, protect, and advance those interests through, among other things, commencement and prosecution of actions for judicial review of decisions of the Secretary on the hydrologic protection provisions of the approved SMCRA regulatory program for West Virginia that fail to implement SMCRA correctly and therefore are arbitrary, capricious, or otherwise inconsistent with law.

-3-

15. WVHC's membership also includes numerous individuals whose interests are or may be adversely affected by the effect of surface coal mining and reclamation operations on West Virginia streams, lakes, and other surface and ground water resources outside the permit areas of such operations.

16. WVHC's individual members whose interests are or may be so affected depend upon WVHC to represent, protect, and advance those interests through, among other things, commencement and prosecution of actions for judicial review of decisions of the Secretary on the hydrologic protection provisions of the approved SMCRA regulatory program for West Virginia that fail to implement SMCRA correctly and therefore are arbitrary, capricious, or otherwise inconsistent with law.

17. OVEC and WVHC participated in the rulemaking procedures which preceded the Secretary's action approving the December 24, 2008, state program amendments, including submission of written comments on the proposed regulation prior to the close of the comment period provided by the Secretary.

18. OVEC and WVHC bring this action on behalf of their members as well as themselves.

19. OVEC, WVHC, and individual members of each organization are suffering and will continue to suffer injury in fact as a result of the Secretary's approval of the December 24, 2008, state program amendments because, among other things, approval of those amendments enable state regulatory officials to approve issue permits to conduct surface coal mining operations (a) without first predetermining threshold limits or ranges that, if exceeded, constitute "material damage to the hydrologic balance outside the permit area" of the proposed operation and (b) without concluding,

as SMCRA requires, that each permitted surface coal mining and reclamation operation has been designed to prevent exceedence of state numeric water quality standards which necessarily define in part the term "material damage to the hydrologic balance outside the permit area." For these reasons and others, approval of the two state program amendments in question threatens to allow operators of surface coal mining and reclamation operations to cause "material damage to the hydrologic balance outside the permit area" of their mines in the form of exceedences of applicable West Virginia water quality standards, which in turn threatens to impair the use or enjoyment of affected water resources by members of OVEC and WVHC.

20.     Additionally, OVEC and WVHC each has an organizational interest in availing itself and its members of SMCRA's procedures for public participation in preventing (a) unlawful amendment of the West Virginia state regulatory program for implementing SMCRA and (b) issuance of permits that have not been designed to prevent "material damage to the hydrologic balance outside the permit area."

21.     All of these interests have been harmed by the Secretary's action approving the December 24, 2008, state program amendments because approval of those amendments stripped away the means by which OVEC and WVHC may ensure, through public participation in the permitting process, that surface coal mining and reclamation operations in West Virginia do not cause or contribute to violations of West Virginia's numeric water quality standards or other applicable pollution limits.

22.     The interests of OVEC and WVHC and their individual members are within the zone of interests sought to be protected by the Administrative Procedure Act and SMCRA.

23.     Defendant Kenneth Salazar is the Secretary of the Interior.  He resides officially in Washington, D.C.  OVEC and WVHC sue him in his official capacity.  The Secretary is responsible for implementing all statutes, regulations, and programs administered by the United States Department of the Interior and its constituent agencies.

24.     The Secretary, acting through the Office of Surface Mining Reclamation and Enforcement ("OSM"), has a statutory mandate to consider and either approve or disapprove State regulatory programs for implementing SMCRA, including amendments to such programs after their initial approval.

25.     The Secretary is also charged with the responsibility of complying with the Administrative Procedure Act.

### Facts

26.     In 1977, Congress enacted SMCRA to:

> (a) ... protect society and the environment from the adverse effects of surface coal mining operations;
>
> (b) assure that the rights of surface landowners ... are fully protected from such operations; ...
>
> (d) assure that surface coal mining operations are so conducted as to protect the environment; ...
>
> (i) assure that appropriate procedures are provided for the public participation in the development, revision, and enforcement of regulations, standards, reclamation plans, or programs established by the Secretary or any State under this Act .... [and]
>
> (m) wherever necessary, exercise the full reach of Federal constitutional powers to insure the protection of the public interest through effective control of surface coal mining operations.

30 U.S.C. §§ 1202(a), (b), (d), (i), and (m).

-6-

27.     Congress required the Secretary to, among other things, "promulgate and publish in the Federal Register regulations covering a permanent regulatory procedure for surface coal mining and reclamation operations performance standards based on and conforming to the provisions of this subchapter and establishing procedures and requirements for preparation, submission, and approval of State programs; and development and implementation of Federal programs under [Title V of SMCRA (30 U.S.C. §§ 1251-1279)]."  30 U.S.C. § 1251(b).

28.     Congress invited "[e]ach State in which there are or may be conducted surface coal mining operations" to submit to the Secretary "a State program demonstrating that such State has the capability of carrying out the provisions of SMCRA and meeting its purposes through [among other things] rules and regulations consistent with the regulations issued by the Secretary pursuant to [SMCRA]."  30 U.S.C. § 1253(a).

29.     Congress directed the Secretary to approve or disapprove any proposed program that a State might initially submit or resubmit after initial disapproval.  30 U.S.C. § 1253(b), (c).

30.     Congress made "[a]ny action of the Secretary to approve or disapprove a State program" subject to judicial review "by the United States District Court for the District which includes the capital of the State whose program is at issue."  30 U.S.C. § 1276(a)(1).

31.     Congress required regulatory authorities which implement SMCRA, including state regulatory authorities implementing approved state regulatory programs, to withhold approval of any application for a mining permit unless the application affirmatively demonstrates and the regulatory authority finds in writing on the basis of information set forth in the application or documented in the approval that, among other things, "the assessment of the probable cumulative impact of all anticipated mining in the area on the hydrologic balance specified in [30 U.S.C. §

-7-

1257(b)] has been made by the regulatory authority and the proposed operation thereof has been

designed to prevent **material damage to hydrologic balance outside permit area**."  30 U.S.C. §

1260(b)(3) (emphasis supplied).

32.     In enacting SMCRA Congress provided that "[n]othing in this Act shall be construed

as superseding, amending, modifying, or repealing . . . any of the following Acts or with any rule

or regulation promulgated thereunder, including, but not limited to –

.     .     .

(3) The Federal Water Pollution Control Act 79 Stat. 903), as amended [33 U.S.C. 1251 et seq.], the State laws enacted pursuant thereto, or other Federal laws relating to preservation of water quality.

30 U.S.C. § 1292(a)(3).

33.     On March 13, 1979, the Secretary complied with SMCRA's rulemaking mandate by

publishing original regulations governing the so-called "permanent program" under that statute. *See*

44 Fed. Reg. 14,901 *et seq*.

34.     Among the Secretary's "permanent program" regulations under SMCRA are 30

C.F.R. § 732.15, entitled "Criteria for approval or disapproval of State programs," and 30 C.F.R. §

732.17, entitled "State program amendments."

35.     The provisions of 30 C.F.R. § 732.17, which govern the sole process by which a State

may amend its State program for implementing SMCRA after the Secretary approves that program,

require the Director of OSM to use the applicable criteria for approval or disapproval of State

programs set forth in 30 C.F.R. § 732.15 in deciding whether to approve or disapprove a proposed

state program amendment.  Those criteria require the Secretary to withhold approval of a State

program

-8-

unless, on the basis of information contained in the program submission, comments, testimony and written presentations at the public hearings, and other relevant information, the Secretary finds that –

(a) The program provides for the State to carry out the provisions and meet the purposes of the Act and this Chapter within the State and that the State's laws and regulations are in accordance with the provisions of the Act and consistent with the requirements of [30 C.F.R. Chapter VII (Parts 700 through 955].

(b) The State regulatory authority has the authority under State laws and regulations pertaining to coal exploration and surface coal mining and reclamation operations and the State program includes provisions to –

　　　(1) Implement, administer and enforce all applicable requirements consistent with [30 C.F.R. Parts 810-828];
　　　　　　　.　.　.
(c) The State laws and regulations and the State program do not contain provisions which would interfere with or preclude implementation of those in [SMCRA] and [30 C.F.R. Chapter VII].

36.　　On January 21, 1981, the Secretary approved West Virginia's program for implementing SMCRA's requirements and regulating the State's surface coal mining and reclamation operations.

37.　　On September 26, 1983, in a notice published at 48 Fed. Reg. 43,955 *et seq*., the Secretary revised the permanent program regulations that govern, among other things, the performance of cumulative hydrologic impact assessments ("CHIAs").

38.　　In the preamble to the September 26, 1983, regulatory revisions, the Secretary explained that 30 C.F.R. §§ 780.21(g) and 784.14(f) impose upon regulatory authorities the duty to "establish criteria to measure material damage for purposes of the CHIAs."  48 Fed. Reg. 43,973.

39.　　The Secretary further explained that "because the gauges for measuring material damage may vary from area to area and from operation to operation, OSM has not established fixed

criteria, **except for those established under §§ 816.42 and 817.42 related to compliance with water-quality standards and effluent limitations**." *Id*.

40.     On May 23, 1990, by notice published at 55 Fed. Reg. 21,303 *et seq*., the Secretary approved, as an amendment to the West Virginia program, numerous State regulations, including one formerly codified at 38 W.V.C.S.R. § 2-2.38, which defined "cumulative impact" as follows:

> Cumulative Impact means the hydrologic impact that results from the cumulation of flows from all coal mining sites to common channels or aquifers in a cumulative impact area. Individual mines within a given cumulative impact area may be in full compliance with effluent standards and all other regulatory requirements, but as a result of the co-mingling of their off-site flows, there is a cumulative impact. The Act does not prohibit cumulative impacts but does emphasize that they be minimized. When the magnitude of cumulative impact exceeds threshold limits or ranges as predetermined by the Division, they constitute material damage.

41.     In approving former 38 W.V.C.S.R. § 2-2.38, the Secretary found that "the Federal requirements at 30 C.F.R. 780.21(g) and 784.14(f) contain provisions regarding cumulative impact of mining on the hydrologic balance which form the basis for the State's definition [of 'cumulative impact']." 55 Fed. Reg. 21,308.

42.     From the date on which the Secretary approved former 38 W.V.C.S.R. § 2-2.38 to December 1, 2003, the West Virginia program contained no other definition of "material damage" with respect to hydrologic concerns.

43.     On May 2, 2001, the West Virginia state regulatory authority ("WVDEP") submitted proposed amendments to the West Virginia program which called for, among other things, deletion of the approved definition of "cumulative impact" and expansion of an existing regulation to define "material damage to the hydrologic balance outside the permit area" to mean:

> any long term or permanent change in the hydrologic balance caused by surface mining operation(s) which has a significant adverse impact on the capability of the affected water resource(s) to support existing conditions and uses.

38 W.Va.C.S.R. § 2-3.22.e (2001).

44.     On May 24, 2001, in a notice published in at 66 Fed. Reg. 28,682 *et seq*., the Secretary announced receipt of the proposed state program amendment and requested public comment on whether she should approve it.

45.     In response to the Secretary's initial request for public comment on WVDEP's proposed state program amendment, OVEC and others informed the Secretary that:

      a.    West Virginia had failed to provide OSM with a reasonable basis for approving the repeal of the regulatory definition of "Cumulative Impact" or its effective replacement with a vague definition of "material damage to the hydrologic balance" which focuses solely upon capability to support existing conditions or uses;

      b.    Because the proposed amendment would allow WVDEP to perform cumulative hydrologic impact assessments ("CHIAs") that do not establish each applicable numeric water quality standard and effluent limitation as fixed criteria for determining material damage, the pertinent portions of the proposed amendment are **NOT** in accordance with the provisions of SMCRA, **NOR** are they consistent with the federal regulations governing hydrologic protection;

      c.    Because predetermination of limits and ranges of hydrologic impact, including applicable numeric water quality standards and effluent limitations, is crucial to the public's ability to monitor, detect, and compel coal operators to correct material damage to the hydrologic balance whenever it occurs, deletion of the definition of "Cumulative Impact" and adoption of a definition of "material damage to the hydrologic balance" focused solely upon capability to support existing conditions or uses would alter the West Virginia program so that it no longer included provisions to provide for public participation in the enforcement of the West Virginia state regulatory program consistent with the public participation provisions of SMCRA; and

      d.    The pertinent provisions of the proposed program amendment contain provisions that would interfere with or preclude implementation of provisions of SMCRA and its implementing federal regulations.

46.     On August 15, 2003, after the Secretary reopened the public comment period, OVEC and others filed additional comments informing the Secretary that despite WVDEP's attempted

-11-

"clarification" of the proposed amendment, the State still had not provided a rational explanation for the proposed amendment.

47.     On December 1, 2003, by notice published at 68 Fed. Reg. 67,035 *et seq.*, first approved, among other program changes, deletion of West Virginia's definition of "cumulative impact" and addition of West Virginia's definition of "material damage to the hydrologic balance."

48.     On January 30, 2004, OVEC and others filed a complaint and petition for judicial review of these two decisions in this Court, thus commencing Civil Action No. 3:04-CV-00084.

49.     On September 30, 2005, this Court vacated the Secretary's December 1, 2003, decision first approving the state program amendments at issue in the case.  The Court remanded the matter to the Secretary for further proceedings consistent with the Court's decision.

50.     On December 12, 2006, the United States Court of Appeals for the Fourth Circuit affirmed this Court's decision to vacate and remand OSM's approval of West Virginia's amendments. *See Ohio River Valley Environmental Coalition v. Kempthorne,* 473 F.3d 94 (4th Cir. 2006).

51.     The court of appeals ruled that OSM's decisions on proposed State program amendments are subject to the rulemaking procedures set forth in Section 553 of the Administrative Procedure Act, 5 U.S.C. 553.  The court of appeals also held that OSM's failure to properly analyze and explain its decision to approve the State's program amendment rendered that action arbitrary and capricious.

52.     By letter dated March 22, 2007, West Virginia re-submitted the identical proposed amendments to its program.

53.     The Secretary announced receipt of West Virginia's proposed amendments in the May 17, 2007, Federal Register.  The Secretary opened a public comment period and provided a background on the proposed amendments. The public comment period ended on June 18, 2007.

54.     The Secretary received written comments from OVEC and WVHC, among others.

55.     On December 24, 2008, the Secretary published the rulemaking at issue in this action, which rejected each of the comments that OVEC and WVHC submitted and instead re-approved the state program amendments.

56.     At no time prior to taking his December 24, 2008, approval action, did the Secretary promulgate as national permanent program regulations any of the interpretations of SMCRA or its implementing regulations upon which he based the second approval of the challenged West Virginia state program amendments.  Nor has the Secretary done so, or proposed to do so, prior to the filing of this complaint.

## Claims for Relief

### Count I

57.     Plaintiffs reassert and reallege Paragraphs 1 through 56 of this complaint. The Secretary unlawfully approved the December 24, 2008, state program amendments based upon interpretations of SMCRA and its implementing regulations that he was obligated to promulgate first as national permanent program regulations before invoking them as a basis for approval of any State program or program amendment.

### Count II

58.     Plaintiffs reassert and reallege Paragraphs 1 through 57 of this complaint.  The Secretary's approval of the December 24, 2008, state program amendments is not supported by the

existing record and is arbitrary, capricious, or otherwise inconsistent with law in violation of the APA and SMCRA, including 5 U.S.C. § 706(2) and 30 U.S.C. § 1276(a).

59.     The Secretary violated the APA and SMCRA, including but not limited to 5 U.S.C. § 553 and 30 U.S.C. § 1251, by approving the December 24, 2008, state program amendments arbitrarily, capriciously, and without adequate explanation, justification, or sufficient evidence in the record to support the action.

60.     The Secretary failed to address adequately or to respond to significant problems or matters that were raised in comments made on the proposed action.

61.     The Secretary based his approval of the December 24, 2008, state program amendments on an interpretation of WVDEP's "clarification" document that is erroneous and inconsistent with the terms of the "clarification" document itself.

## Prayer for Relief

OVEC and WVHC respectfully request that this Court:

A.     Declare that the Secretary's approval of the December 24, 2008, state program amendments violates SMCRA and the Administrative Procedure Act;

B.     Declare that the Secretary's approval of the December 24, 2008, state program amendments is arbitrary, capricious, an abuse of discretion, or otherwise inconsistent with law, in violation of the Administrative Procedure Act, SMCRA, or both;

C.     Enter an order expressly vacating the Secretary's approval of the December 24, 2008, state program amendments and directing reinstatement of West Virginia's regulation defining "cumulative impact;"

D.      Enjoin the Secretary or those acting under her authority from taking or withholding any action based in whole or in part upon the approval of the December 24, 2008, state program amendments;

E.      Enter an order compelling the Secretary to notify WVDEP that it must implement its former definition of "cumulative impact" with respect to all active mining permits in the State and that it must promptly perform a new CHIA for each permit issued since December 24, 2008, in order to rescind any application of the agency's definition of "material damage to the hydrologic balance" and to implement in its stead the definition of "cumulative impact;"

F.      Award Plaintiffs their costs, disbursements, and reasonable attorneys' fees; and

G.      Grant such other relief as the Court deems just and appropriate.

Respectfully submitted,

OHIO RIVER VALLEY ENVIRONMENTAL COALITION, INC.
WEST VIRGINIA HIGHLANDS CONSERVANCY, INC.

s/ Derek O. Teaney
DEREK O. TEANEY (W. Va. Bar No. 10223)
JOSEPH M. LOVETT (W. Va. Bar No. 6926)
Attorneys for the Plaintiff
Appalachian Center for the Economy and the Environment
Post Office Box 507
Lewisburg, West Virginia 24901
Telephone: (304) 645-9006
Telefax: (304) 645-9008
E-mail: dteaney@appalachian-center.org